

**FILED & ENTERED**

**AUG 27 2015**

**CLERK U.S. BANKRUPTCY COURT
Central District of California
BY** RUST **DEPUTY CLERK**

# NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>THOMAS KONIG,<br><br><br><br><br><br><br><br>Debtor.<br>_____ | Case No. 9:09-bk-12617-PC<br><br>Chapter 11<br><br>**MEMORANDUM DECISION**<br><br>Date:  July 29, 2015<br>Time:  10:00 a.m.<br>Place: United States Bankruptcy Court<br>         Courtroom # 201<br>         1415 State Street<br>         Santa Barbara, CA 93101 |

    This matter comes before the court on the motion of Jeremy W. Faith, Chapter 11 Trustee ("Faith") seeking disallowance of Claim # 37-3 filed by Tami Krajeski (formerly known as Tami Sacks) ("Krajeski"). Faith seeks disallowance of Krajeski's Claim # 37-3 in its entirety. Krajeski opposes Faith's motion. The court, having considered the pleadings, evidentiary record, and arguments of counsel, will grant, in part, and deny, in part, Faith's motion pursuant to the following findings of fact and conclusions of law made under F.R.Civ.P. 52(a)(1),[1] as incorporated into FRBP 7052 and applied to contested matters in bankruptcy cases.

---

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330. "Rule" references are to the Federal Rules of

1

I.  STATEMENT OF FACTS

On July 1, 2009, Thomas Konig ("Debtor") filed a voluntary petition under chapter 11 of the Bankruptcy Code.  On July 17, 2009, Debtor filed his schedules and statements in the case.  In Schedule F, Debtor listed Krajeski as an "Investor" holding an unsecured nonpriority claim in the amount of $425,000.  The claim was not listed as contingent, unliquidated or disputed.  On July 20, 2009, a Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines ("Notice") was issued by the clerk.  On July 22, 2009, the Notice was served on Krajeski at P.O. Box 684394, Park City Utah.

On September 25, 2009, Debtor filed and served a Notice of Bar Date for Filing Proofs of Claim or Interest ("Claims Deadline Notice") to notify creditors and other parties in interest of the deadline of December 15, 2009, to file a proof of claim in the case.  That day, Krajeski was served with a copy of the Claims Deadline Notice at P.O. Box 684394, Park City, Utah.

On October 29, 2009, Debtor filed a document entitled Amendment to Chapter 11 Petition, and Schedules B, C, E and F of Chapter 11 Schedules of Assets and Liabilities ("Amendment") which, in pertinent part, amended Schedule F to change the amount of Krajeski's claim from $425,000 to "Notice Only."  On November 2, 2009, Krajeski was served with a copy of the Amendment at P.O. Box 684394, Park City, Utah.

On October 21, 2011, the court ordered the appointment of a chapter 11 trustee pursuant to § 1104(a).  Faith was appointed trustee on November 4, 2011.

On June 2, 2014, Krajeski filed her original proof of claim in this case ("Claim # 37-1") asserting an unsecured nonpriority claim in the amount of $425,000 based upon "investment loans."  Krajeski filed Claim # 37-1 without the assistance of counsel.  Among the documents attached to Claim # 37-1 were copies of two promissory notes:  (1) a Promissory Note in the original principal sum of $150,000 executed by Debtor and payable to the order of Krajeski dated June 1, 2004; and (2) a Promissory Note in the original principal sum of $150,000 executed by Debtor and payable to the order of Krajeski dated August 24, 2004.

---

Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P.").  "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

2

On October 6, 2014, Faith filed an objection to Krakeski's Claim # 37-1 alleging that Krajeski was "an investor in [J&TK Hospitality, LLC], not a creditor of Debtor[,]" and therefore, Krajeski's "Proof of Claim fails to state a claim under applicable non-bankruptcy law."[2] Faith did not object to the timeliness of Krajeski's proof of claim. On October 22, 2014, Krajeski filed and served a response in opposition to Faith's objection, arguing that Debtor was liable to Krajeski for the balance due under two promissory notes on the petition date. At the hearing on November 5, 2015, the court stated:

> It seems to me that the notes were executed. There's a series of notes executed, some supplanting other notes, but the upshot was at the time of the filing of the petition there were two notes which are regular on their face. Each one shows that the debtor is personally liable for the balance due under the note. There was a $425,000 – a $300,000 note which replaced two preceding promissory notes and then [a] $150,000 note, according to the response. They're not attached to the proof of claim but they seem to come into play with the response as being what [were] the operative notes at the time of filing.
>
> And then there's the Trustee's argument that this was – that the debtor was not to be personally liable under any of these notes and was never intended to be personally liable under any of these notes. It was part of an investment in a third party LLC for which the claimant would receive distributions, but there doesn't seem to be any dispute that the note was executed. The note had certain terms. The value was given to the debtor individually on account of the note, and then the debtor used the money, turned around and invested these funds in the LLCs, and then ultimately the – there's evidence that the claimant became a member of this LLC and received distributions.
>
> I agree with you that to the extent distributions were made by the corporation and may have inured to the benefit of reducing the amount due by the debtor on the note, maybe that's an issue we should examine, but I don't see any – I don't see sufficient evidence on which to make a finding that the debtor was somehow relieved of any personal liability on these notes prior to the filing of the petition. There's no evidence of a novation, no allegations of fraud, accident or mistake where these notes could be reformed, nothing like that.[3]

The court concluded by stating:

---

[2] Jeremy Faith, Chapter 11 Trustee's Motion Objecting to Claim of Tami Sacks (Claim No. 37) [Dkt. # 504], 1:20-22.

[3] Chapter 11 Trustee's Motion Objecting to Second Amended Claim of Tami Krajeski [Claim No. 37-3] ("Faith's Motion") [Dkt. # 606], 89:11-90:20.

3

> The proof of claim that is before the Court today which says [Krajeski] is entitled to assert a claim against the estate for the principal sum of $425,000, the evidentiary basis for that claim as attached to the claim does not even add up to $425,000, so that's just – that's a basis in itself to sustain the objection.
>
> I'm giving you an opportunity to amend because in the response you provided the Court with copies of the promissory notes and information that would provide a basis for a proof of claim in the principal sum of $425,000. Once that is filed with the Court, then the Trustee will have an opportunity to object to that claim and [we] will get into the issue of whether or not any amount of funds that were paid to the claimant on account of either her interest in this LLC or directly by the debtor on account of either promissory note somehow had reduced the liability on account of such claim to the estate.[4]

By order entered on November 6, 2014, the court sustained Faith's objection to Krajeski's Claim # 37-1 and granted Krajeski "up to and including December 12, 2014 to file her Amended Proof of Claim."[5]

On December 12, 2014, Krajeski filed her First Amended Proof of Claim ("Claim # 37-2") amending Claim # 37-1 to assert an unsecured nonpriority claim in the amount of $596,248.82 for the balance due under the following promissory notes: (1) a promissory note in the original principal sum of $300,000, executed by Debtor and payable to the order of Krajeski dated April 1, 2004 (the "$300,000 Note"); and (2) a promissory note in the original principal sum of $150,000, executed by Debtor and payable to the order of Krajeski dated June 1, 2004 (the "$150,000 Note"). Faith did not object to Krajeski's Claim # 37-2.

On April 16, 2015, Krajeski filed her Second Amended Proof of Claim ("Claim # 37-3) amending Claim # 37-2 to increase to $613,015.62 her claim based upon the $300,000 Note and the $150,000 Note and to assert, in the alternative, an unliquidated claim for alleged fraud and securities fraud. Faith's Motion was filed on June 20, 2015. Krajeski responded to Faith's Motion on July 15, 2015. Faith replied on July 22, 2015. After a hearing on July 29, 2015, the matter was taken under submission.

---

[4] Id. at 96:16-97:8.

[5] Order Sustaining Chapter 11 Trustee's Amended Motion Objecting to Claim of Tami Sacks with Leave to Amend – Claim No. 37 [Dkt. # 553], at 2:4-5.

4

II.  DISCUSSION

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b).  Faith's Motion seeking disallowance of Krajeski's Claim # 37-3 is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).  Venue is appropriate in this court.  28 U.S.C. § 1409(a).

A. Faith's Burden of Proof on Objection to Claim.

A proof of claim is deemed allowed unless a party in interest objects.  11 U.S.C. § 502(a). Absent an objection, a proof of claim constitutes prima facie evidence of the validity and amount of the claim under FRBP 3001(f).  Lundell v. Anchor Constr. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000).  When a creditor has filed a proof of claim that complies with the rules, thereby giving rise to the presumption of validity, the burden shifts to the objecting party who must "present evidence to overcome the prima facie case."  U.S. v. Offord Fin., Inc. (In re Medina), 205 B.R. 216, 222 (9th Cir. BAP 1996).  To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves."  Lundell, 223 F.3d at 1039, quoting In re Holm, 931 F.2d 620, 623 (9th Cir. 1991).  "The objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."  Lundell, 223 F.3d at 1040, quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992).  If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.  Ashford v. Consol. Pioneer Mort. (In re Consol. Pioneer Mort.), 178 B.R. 222, 226 (9th Cir. BAP 1995), aff'd, 91 F.3d 151 (9th Cir. 1996), quoting Allegheny Int'l, 954 F.2d at 173-74.  The ultimate burden of persuasion remains at all times on the claimant.  Lundell, 223 F.3d at 1039; Holm, 931 F.2d at 623.

B. Krajeski's Claim # 37-3.

On April 16, 2015, Krajeski filed Claim # 37-3 in the amount of $613,015.62.  The basis of the claim is "[t]wo promissory notes, fraud, [and] securities fraud."  Claim # 37-3 amends an

5

original proof of claim filed on December 12, 2014.  The two promissory notes which, in part, form the basis of Claim # 37-3 are:

    1. <u>The #300,000 Note</u>.  According to its terms, interest accrued on the $300,000 Note at a rate of 7% per annum, and was payable in quarterly installments beginning July 1, 2004, and continuing quarterly thereafter until maturity on April 1, 2009, at which time all principal and accrued interest was due and payable in full.

    2. <u>The $150,000 Note</u>.  According to its terms, interest accrued on the $150,000 Note at a rate of 10% per annum, and was payable in monthly installments beginning July 1, 2004, and continuing monthly thereafter until maturity on May 31, 2009, at which time all principal and accrued interest was due and payable in full.

By its terms, the $300,000 Note "replace[d] the $100,000 note between the parties dated July 1, 2002 as well as the $200,000 note dated February 4, 2003."[6]  Similarly, the $150,000 Note, by its terms, superseded a prior promissory note in the original principal sum of $50,000 executed by the parties dated March 22, 2004.  Claim # 37-3 incorporates by reference the following exhibits attached to Claim # 37-2, which was amended and superseded by Claim # 37-3:

    1. Exhibit A:  $150,000 Note;

    2. Exhibit B:  $150,000 Note interest receipts;

    3. Exhibit C:  $150,000 Note amortization calculation;

    4. Exhibit D:  $300,000 Note

    5. Exhibit E:  Amended $300,000 Note interest receipts

    6. Exhibit F:  Amended $300,000 Note amortization calculation;

    7. Exhibit G:  Amended Declaration of Jared L. Inouye;

    8. Exhibit H:  Amended Declaration of Jessica M. Mickelsen;

    9. Exhibit J:  Amended Declaration of Tami Krajeski, formerly known as Tami Sacks, in Support of Second Amended Proof of Claim

Krajeski's Claim # 37-3 seeks allowance and payment of $613,015.62 consisting of:  (1) $221,547.96 in principal and accrued interest due under the $150,000 Note; (2) $357,001.53 in

---

[6] Sacks' Response to Chapter 11 Trustee's Motion Objecting to Second Amended Claim of Tami Sacks (Claim No. 37) ("Krajeski Opposition"), Exh. # 3, at 20.

6

principal and accrued interest due under the $300,000 Note; and (3) attorneys' fees and costs of $34,466.13. Krajeski's Claim # 37-3 based on the $150,000 Note and the $300,000 Note complies with the requirements of FRBP 3001, and "constitute[s] prima facie evidence of the validity and amount of [her] claim."[7] See FRBP 3001(f).

C. Faith's Objection to Krajeski's Claim # 37-3.

Before delving into the merits of Faith's Objection to Krajeski's Claim # 37-3, it is important to identify the facts that Faith does not dispute regarding the $150,000 Note and $300,000 Note:

1. Debtor executed the $150,000 Note, and Krajeski delivered $150,000 in proceeds to Debtor in connection with the $150,000 Note.

2. Debtor agreed to the terms of the $150,000 Note, including liability to Krajeski for all reasonable expenses and costs incurred in the collection of the note, including, without limitation, attorneys' fees and court costs in trial, appeal and in bankruptcy.

3. Debtor did not repay any portion of the outstanding principal balance of the $150,000 Note.

4. Interest which accrued on the $150,000 Note at a rate of 10% between June 1, 2004 and May 31, 2015, totaled $165,041.10. Interest payments made on the $150,000 Note during such period totaled $91,397.25, leaving $73,643.85 in interest due on the $150,000 Note as of May 31, 2015, Interest continues to accrue on the $150,000 Note from May 31, 2015, at a per diem of $41.10.

5. Debtor executed the $300,000 Note, and Krajeski delivered $300,000 in proceeds to Debtor in connection with the $300,000 Note.

6. Debtor agreed to the terms of the $300,000 Note, including liability to Krajeski for all reasonable expenses and costs incurred in the collection of the note, including, without limitation, attorneys' fees and court costs in trial, appeal and in bankruptcy.

7. Debtor made a $25,000 principal payment on the $300,000 Note on February 20, 2007, which reduced the principal amount owing under the $300,000 Note to $275,000.

---

[7] Krajeski's Claim # 37-3 "further asserts an alternative claim for fraud and securities fraud in the amount of at least $275,000." Id., Exh. # 3, at 4. Krajeski's alternative claim is not supported by any documents attached to the proof of claim which would be entitled to the evidentiary effect afforded by FRBP 3001(f).

7

    8. Interest which accrued on the $300,000 Note at a rate of 7% between April 1, 2004 and February 19, 2007, totaled $60,641.10.

    9. Interest which accrued on the $300,000 Note at a rate of 7% between February 20, 2007 and May 31, 2015, totaled $159,379.45.

    10. Interest accruing on the $300,000 Note from April 1, 2004 through May 31, 2015, totaled $220,020.55.[8]

Notwithstanding the foregoing, Faith asserts that Krajeski's Claim # 37-3 must be disallowed in its entirety for the following reasons: (1) Claim # 37-3 is barred by the doctrine of laches and estoppel; and (2) Claim # 37-3 fails to state a claim under applicable non-bankruptcy law.[9]

D. <u>Laches Does Not Prevent Krajeski from Asserting Claim # 37-3</u>.

    Faith urges disallowance of Krajeski's Claim # 37-3 on the basis of laches, arguing that Krajeski should be prevented from asserting her claim against the estate at this late date because she has slept on her rights since the inception of this case in 2009. In support of his contention, Faith notes that: (1) the $300,000 Note and the #150,000 Note matured in 2009; (2), Krajeski had actual notice of the Debtor's bankruptcy and the claims deadline in sufficient time to file a timely proof of claim; (3) Krajeski knew that the Debtor disputed her claim, particularly after amending Schedule F to change the amount of the claim from $425,000 to "Notice Only;" and (4) notwithstanding these facts, Krajeski waited a period of five years before filing her original proof of claim with the court on June 2, 2014. Specifically, Faith argues that Krajeski "knew (1) that she had the right and opportunity to file a Proof of Claim in the first place (that the Debtor would thereafter object to); (2) it would be costly for the Debtor to try to reject that claim, such that there was a chance he may choose not to undergo that expense; and (3) that Debtor already disagrees that she is entitled to a claim, such that she knew she should take some action to

---

[8] Chapter 11 Trustee's Separate Statement of Disputed Facts in Opposition to Tami Krajeski fka Tami Sacks Motion for Partial Summary Adjudication, 2:3-4:15.

[9] Faith's Motion, 1:6-9. Because Faith does not discuss the doctrine of estoppel in his motion, Faith's Motion is denied to the extent that it seeks disallowance of Krajeski's Claim # 37-3 on the basis of estoppel.

8

protect her rights which are already being harmed by the Debtor's refusal to acknowledge her claim. Instead she did nothing."[10]

"[T]he equitable doctrine of laches, which has as its goal the prevention of prejudicial delay in the bringing of a proceeding, is a relevant and necessary doctrine in the bankruptcy context." Beaty v. Selinger (In re Beaty), 306 F.3d 914, 922 (9th Cir. 2002). However, "[i]ts application depends upon the facts of the particular case." Brown v. Continental Can Co., 765 F.2d 810, 814 (9th Cir. 1985). "The affirmative defense of laches 'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" Kansas v. Colorado, 514 U.S. 673, 687 (1995) (quoting Costello v. United States, 365 U.S. 265, 282 (1961)); see, e.g., Couveau v. Am. Airlines, Inc., 218 F.3d 1078, 1083 (9th Cir. 2000) ("To establish laches a defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself."); Apache Survival Coalition v. United States, 118 F.3d. 663, 665 (9th Cir. 1997) ("To establish the defense of laches, a party must show prejudice caused by the opposing party's lack of diligence in pursuing its claim.").

1. Lack of Diligence/Unreasonable Delay

Krajeski does not deny receiving notice of the Debtor's bankruptcy case and notice of the deadline to file a proof of claim. Krajeski was served with both the Notice and Claims Deadline Notice at P.O. Box 684394, Park City, Utah – the address later listed by Krajeski in her Claim # 37-1 filed on June 2, 2014. Krajeski admits that she learned of the Debtor's bankruptcy "from a letter that she received in the mail" shortly after the maturity dates of the two promissory notes "in April and May 2009."[11] Krajeski testified: "Konig and I had been friends, and, at this time, we were still friends. We talked about his bankruptcy case on several occasions, up until I filed my proof of claim."[12] She also admits that she knew of the December 15, 2009, deadline to file a proof of claim in this case, but that she did not file Claim # 37-1 until June 2, 2014.

---

[10] Id. at 11:11-16.

[11] Declaration of Tami Krajeski ("Krajeski Decl.") [Dkt. # 619-4], at 4:14-15.

[12] Id. at 4:16-17.

9

On the other hand, the court notes that Krajeski was not represented by counsel in this case until after she filed Claim # 37-1. According to the evidence, Krajeski reviewed the Debtor's original schedules and understood that her claim was listed in Schedule F in the amount of $425,000. Krajeski understood from the Claims Deadline Notice that it was not necessary to file a proof of claim if her claim was listed correctly in the Debtor's schedules and not scheduled as contingent, unliquidated or disputed. Krajeski testified that both the Debtor and Faith's counsel "told me that I did not have a claim and thus I had no reason to file a claim in Konig's bankruptcy."[13] She further testified that she "relied on the representations of Konig and the Trustee because: a) I was friends with Konig and trusted him; and b) I thought the Trustee was representing the interests of all creditors, including mine, and thus I trusted his counsel's advice too."[14] Krajeski claims that she filed Claim # 37-1 after receiving information regarding the Debtor's failed business ventures and advice from other "investors" who filed proofs of claim in the case. She further claims that she did not learn that Debtor had amended Schedule F to change the amount of her claim from $425,000 to "Notice Only" until <u>after</u> she filed her original proof of claim.[15] Both the Debtor and Faith's counsel deny making any statements to Krajeski regarding whether or not to file a proof of claim.

The weight of the credible evidence supports a finding that Krajeski's delay in filing her proof of claim was unreasonable, particularly given her actual knowledge of the Debtor's bankruptcy and the claims deadline in sufficient time to file a timely proof of claim. Because Krajeski was properly served with the Amendment and admittedly communicated with the Debtor on a regular basis regarding his bankruptcy in 2009, Krajeski either knew or should have known prior to the claims deadline that the amount of her claim in Schedule F had been changed from $425,000 to "Notice Only." However, "[m]ere delay alone will not establish laches." <u>Beaty</u>, 306 F.3d at 927.

---

[13] <u>Id.</u> at 4:24-25.

[14] <u>Id.</u> at 5:3-5.

[15] <u>Id.</u> at 8:2-4.

2. Prejudice

Despite the court's finding that the record demonstrates unreasonable delay by Krajeski in filing her proof of claim, the most critical element in a laches determination is whether Faith has been prejudiced through no fault of his own by Krajeski's inexcusable delay. See Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116, 1126-27 (9th Cir. 2006). "[L]aches is not a doctrine concerned solely with timing. Rather, it is primarily concerned with prejudice." Beaty, 306 F.3d at 924. Faith argues:

> At the time Claimant filed her Proof of Claim, Trustee had resolved ALL claims and was finalizing his First Amended Plan which would pay all allowed claims in full with interest. But for the Proof of Claim by Claimant, the First Amended Plan would have now been confirmed, creditors would have been paid, and Debtor would have received the surplus held by the Trustee. . . . This further delay while the late Proof of Claim is litigated will result in additional administrative fees, further delay in payment to creditors, interest on the claims and reduction of the surplus that would otherwise go to the Debtor.[16]

Faith's allegations of prejudice, however, are not supported by a declaration or any other evidence demonstrating concrete harm. Furthermore, Faith's assertions are belied by the docket in this case.

According to the docket, Faith was still involved in claims litigation, settlements, and the sale or abandonment of estate assets when Krajeski filed her original proof of claim on June 2, 2014.[17] Faith did not file his First Amended Liquidating Chapter 11 Plan and accompanying disclosure statement until October 15, 2014 – four months later. Krajeski, Jan Beresford

---

[16] Faith's Motion, 13:2-14.

[17] For example, the court sustained Faith's objection to Claim # 26 filed by Solvang Hospitality Inv., LP by order entered on September 29, 2014. On October 13, 2014, Faith objected to Claim # 10 filed by the Internal Revenue Service and set the matter for hearing on November 12, 2014. On October 30, 2014, Faith withdrew the objection and the matter was taken off calendar. The court sustained Faith's objections to the claims of Discover Card, Claim # 1; HSBC, Claim # 2; Chase Bank USA, N.A., Claim # 5, and HSBC/Neiman Marcus, Claim # 21 by order entered on November 6, 2014. On February 24, 2015, Faith objected to Claim Nos. 14, 15 and 16 filed by American Express. On March 18, 2015, American Express filed a response in opposition to Faith's objection. Faith withdrew his objection to Claim Nos. 14, 15 and 16 on March 30, 2015, and the hearing scheduled for April 1, 2015, was taken off calendar.

11

("Beresford"), and the United States trustee ("UST") each objected to approval of Faith's first amended disclosure statement. The deficiencies in Faith's first amended disclosure statement were not limited to issues regarding the treatment of Krajeski's claim. By order entered on November 6, 2014, the court sustained the objections of Krajeski, Beresford and the UST to Faith's first amended disclosure statement, denied approval of the first amended disclosure statement, and ordered that Faith not file a second amended disclosure statement until such time as his objection to Krajeski's claim was resolved.

Finally, Faith did not object to the timeliness of Krajeski's original proof of claim when he had the opportunity to do so. Krajeski's Claim # 37-1 was filed on June 2, 2014. When Faith objected to Claim 37-1 on October 6, 2014, Faith knew that the claim was filed after the claims deadline but did not object to the claim as untimely. In sustaining his objection to Claim # 37-1, the court gave Krajeski leave until December 12, 2014, to file an amended claim. Krajeski then timely filed Claim # 37-2 on December 12, 2014, which was amended by Claim # 37-3. Inexplicably, Faith did not file a further objection to Krajeski's claim until June 29, 2015. In response to the court's inquiry at the hearing on July 29, 2015, Faith's counsel stated that he knew Krajeski's claim was untimely when he filed the original objection, but that he elected not object on the grounds of untimeliness and to focus the objection on the merits of the claim. "Waiver is the intentional relinquishment of a known right after knowledge of the facts." Van Curren v. Great Am. Ins. Co. (In re Hat), 363 B.R. 123, 145 (Bankr. E.D. Cal. 2006) (quoting Kacha v. Allstate Ins. Co., 140 Cal.App.4th 1023, 1033-34 (2006); see Groves v. Prickett, 420 F.2d 1119, 1125 (9th Cir. 1970) (" A waiver is an intentional relinquishment or abandonment of a known right or privilege."). Having made an informed decision not to object to Krajeski's original proof of claim as filed after the claims deadline, Faith has waived any objection that Krajeski's original proof of claim and the amendment thereto filed with leave of this court are untimely.

"[G]eneric claims of prejudice do not suffice for a laches defense in any case, and are particularly insufficient in a case in which a heightened showing of extraordinary circumstances and demonstrable prejudice is required." Beaty, 306 F.3d at 928. Because Faith has failed to

demonstrate prejudice by Krajeski's alleged lack of diligence in pursuing her claim, Faith's objection to Krajeski's Claim # 37-3 based upon the doctrine of laches will be overruled.

E. <u>Faith's Extrinsic Evidence is Not Relevant to Prove a Meaning That the Language of Either the $150,000 Note or the $300,000 Note is Reasonably Susceptible.</u>

Faith next argues that Krajeski's Claim # 37-3 must be disallowed in its entirety under 11 U.S.C. § 502(b)(1) because it is unenforceable against the Debtor under applicable non-bankruptcy law. Faith asserts that Krajeski is a disgruntled investor in J&TK Hospitality, LLC ("J&TK"), that the $150,000 Note and $300,000 Note were executed to facilitate her investment in J&TK, and that the notes were never intended to be enforced against the Debtor personally.

According to Faith, Krajeski elected to invest a total of $150,000 in J&TK in 2004 which, in turn, invested the funds in an entity known as Xten. Faith asserts that Krajeski's $150,000 "investment" was evidenced by the $150,000 Note; and that once the investment was made, [Krajeski] was supposed to destroy the [$150,000 Note]."[18] In support of his assertions, Faith points to a letter from Debtor to Krajeski dated May 24, 2004 [Exh. L] and a letter from Debtor to Krajeski dated June 1, 2004 [Exh. M]. Neither letter is referred to in the $150,000 Note nor is the substance of either letter incorporated by reference into the $150,000 Note.

With respect to the $300,000 Note, Faith claims that Krajeski invested a total of $300,000 in J&TK which, in turn, invested the funds in a limited partnership known as Solvang Hospitality INV, LP formed to purchase a hotel in Santa Maria, California. As evidence of this investment, Faith points to an Agreement between Krajeski and J&TK dated November 18, 2005 [ the "J&TK Agreement"], which states, in pertinent part, that (1) "J&TK has made an investment in Solvang Hospitality INV, LP . . . which entitles him to 13.58% of 100% of the total partnership interests" and (2) "J&TK will make available from his $2,500,000 investment $300,000 to

---

[18] Faith's Motion, 15:23-24. Even though the $150,000 Note ostensibly was to be destroyed, Xten apparently undertook to make interest payments to Krajeski. Faith admits that Krajeski "received monthly interest payments directly from Xten until Bank of America forced Xten to stop making payments on mezzanine financing" at which time "the debt was converted to equity." <u>Id.</u> at 15:25-27.

13

[Krajeski] (["Krajeski's] Participation")."[19]  Faith also points to the Operating Agreement of J&TK Hospitality, LLC dated September 20, 2009 [the "J&TK Operating Agreement"], which was signed by Krajeski on March 25, 2010.  Neither the J&TK Agreement or the J&TK Operating Agreement refer to the $300,000 Note nor does the $300,000 Note refer to or incorporate by reference either the J&TK Agreement or the J&TK Operating Agreement.

Next, Faith points to the fact that J&TK treated the amounts advanced by Krajeski to Debtor as investments for income tax purposes.  Faith states:

> Each year, for each deal, Debtor would receive a K-1, and Debtor's accountant would create what Debtor describes as a "pseudo K-1s" from Debtor to Debtor's investors to account for the fact that Debtor's actual investment was less than the amount stated on the K-1's he received and to credit the investors for their investment through Debtor.  If the payments were interest, [Krajeski] would have received a Form 1099, NOT a K-1."[20]

Finally, Faith submits the declarations of Charles W. Whiting, William J. Nasif, Pat Reed, Steven J. Hicks, David M. Rafalko, Patty Bryant, Michael Bryant and Bob Bryant – each of whom testified that he or she: (a) invested funds through J&TK; (b) received a promissory note from Debtor at the time of the investment; (c) understood that he or she was not loaning money to Debtor personally; (c) received K-1's in connection with the investment with J&TK; and (d) understood that any return on the investment or payment would come from J&TK or the entity in which J&TK invested the funds, not Debtor.

Krajeski denies Faith's allegations, asserting that she loaned money to the Debtor under the $150,000 Note and $300,000 Note expecting repayment according to the terms of each note.  The fact that the Debtor invested the funds through J&TK in Xten and Solvang Hospitality INV, LP does not, according to Krajeski, relieve him from his obligations under either note.  Krajeski denies exonerating Debtor from liability under the $150,000 Note or the $300,000 Note, testifying that:

> After Konig filed for bankruptcy, and at his request, I signed the Operating Agreement of J&TK on March 25, 2010.  When I signed the Operating

---

[19] Id. at 185.

[20] Id. at 15:1-5.

14

> Agreement at Konig's insistence, I did not agree to exonerate Konig of his obligations under the $150,000 Note and $300,000 Note, and I have never agreed to exonerate Konig of his obligations. Konig likewise never asked me to destroy the $150,000 Note or the $300,000 Note, and I have never signed any assignment, modification, letter or any other document to rescind or negate these notes, nor was I asked to do so.
>
> I always believed that the $150,000 Note and $300,000 Note existed independently of the investments for which Konig was using my loan monies through J&TK. Konig even personally paid me interest on the notes. . . . I never believed any investments cancelled out my notes with Konig. I would not have loaned Konig $425,000 if I did not have the promissory notes.[21]

Krajeski objects to the court's consideration of any extrinsic evidence, including the J&TK Agreement, J&TK Operating Agreement, the K-1s, and the declarations of Charles W. Whiting, William J. Nasif, Pat Reed, Steven J. Hicks, David M. Rafalko, Patty Bryant, Michael Bryant and Bob Bryant insofar as they are offered to vary, add to, or contradict the terms of either the $150,000 Note or the $300,000 Note, arguing that Faith has not alleged fraud, accident or mistake in the execution of either note nor has Faith established that an ambiguity exists with respect to either note warranting the consideration of extrinsic evidence.

In most jurisdictions, extrinsic evidence is not admissible, absent allegations of fraud, accident or mistake, to vary, add to, or contradict the terms of a valid written instrument that is, on its face, complete and unambiguous. See, e.g., <u>Universal Life Guaranty Ins. Co. v. Coughlin</u>, 481 F.3d 458, 463 n.2 (7th Cir. 2007) ("Because the dragnet clause is unambiguous, we cannot consider parol evidence."); <u>Hill v. Akamai Tech., Inc. (In re MS55, Inc.)</u>, 477 F.3d 1131, 1137 (10th Cir.. 2007) ("[Because] the order is not ambiguous[,] . . . the parole evidence rule precludes us from examining extrinsic evidence in interpreting the agreement."); <u>U.S. Small Bus. Admin. v. Guaranty Bank & Trust Co. (In re Whatley)</u>, 874 F.2d 997, 1004 n.11 (5th Cir. 1989) ("When the instruments are clear and unambiguous, parol testimony is inadmissible, and the documents themselves will stand to evidence the parties' intent."). In <u>Wilson Arlington Co. v. Prudential Ins. Co. of Am.</u>, the Ninth Circuit explained the policy behind enforcement of the parol evidence rule:

---

[21] Krajeski Decl., 8:21-9:9.

15

> If parties to an agreement could not rely on written words to express their consent to the express terms of that agreement, those words would become little more than sideshows in a circus of self-serving declarations as to what the parties to the agreement really had in mind. The parol evidence rule thus enables parties to rely on written instruments as embodying a complete memorial of their agreement, and to avoid costly and disruptive litigation over the existence of oral and implied terms that may or may not have been contemplated by the parties.

912 F.2d 366, 370 (9th Cir. 1990). However, California's parol evidence rule differs markedly from the majority of jurisdictions.

In California, parol evidence is admissible to construe a facially unambiguous contract if the proffered interpretation is one to which the agreement is "reasonably susceptible." Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., 69 Cal.2d 33, 37 (1968). In Pacific Gas & Electric, the California Supreme Court discussed the admissibility of extrinsic evidence to explain the meaning of a written instrument, stating:

> The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. . . .
>
> Although extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract, these terms must first be determined before it can be decided whether or not extrinsic evidence is being offered for a prohibited purpose. The fact that the terms of an instrument appear clear to a judge does not preclude the possibility that the parties chose the language of the instrument to express different terms. That possibility is not limited to contracts whose terms have acquired a particular meaning by trade usage, but exists whenever the parties' understanding of the words used may have differed from the judge's understanding.

69 Cal.2d at 37-39. In sum, Pacific Gas & Electric requires the court to conditionally consider proffered extrinsic evidence to determine if it would be relevant to prove a meaning to which the language of a facially unambiguous instrument is reasonably susceptible. See George v. Automobile Club of S. Cal., 201 Cal.App.4th 1112, 1122 (2012).

In this case, the California parol evidence rule must be applied to interpret the $150,000 Note and the $300,000 Note because both notes were executed in California and expressly state that they are to be "governed by and construed and enforced in accordance with the law of the

State of California." There is no allegation of fraud, accident or mistake in the execution of either the $150,000 Note or the $300,000 Note. Nor is there any apparent or latent ambiguity in the language used in either the $150,000 Note or the $300,000 Note. The court has conditionally considered the extrinsic evidence offered by Faith as required by Pacific Gas & Electric to determine whether evidence offered is relevant to prove a meaning that the unambiguous language contained in either the $150,000 Note or the $300,000 Note might be reasonably susceptible. The court concludes that such evidence is inadmissible because neither the language of the $150,000 Note nor the $300,000 Note is reasonably susceptible of the interpretation proffered by Faith.

F. Krajeski Admits Payment and Investment of the Proceeds Attributable to the $300,000 Note.

Finally, Faith asks that, "[t]o the extent that the Court determines that the Note is valid and binding," Krajeski's claim based upon the $300,000 note be disallowed because "the Debtor repaid the principal amount due and owing under the Note in 2007."[22] Debtor testified that Krajeski "was given the choice to either receive her $300,000.00 or reinvest it in a new investment with David Prenatt. [Krajeski] asked for and received $25,000.00 and reinvested $275,000.00 in a new investment with David Prenatt."[23] Krajeski admits that she received a principal payment of $25,000 on the $300,000 Note on February 20, 2007. Krajeski also admitted at her deposition on February 23, 2015, that she made an affirmative election to invest the remaining balance due under the $300,000 Note in the Santa Maria Holiday Inn Hotel rather than receive immediate repayment of the $300,000 Note.[24] She testified:

> Q. And this indicates, I think as you mentioned, that the Santa Maria Holiday Inn hotel was refinanced as of February 18, 2007?
>
> A. Yes.
>
> Q. Now, at that point in time you received a check which is attached in the amount of $25,000?

---

[22] Faith's Motion, 16:19-20.

[23] Id. at 20:17-19 (emphasis in original).

[24] Id. at 30.

17

A. Yes.

Q. And that was part of the principal of the $300,000?

A. Yes.

Q. And if I understand – well, what happened to the other $275,000?

A. The $275,000 was reinvested in the Santa Maria Hotel.

Q. Did you chose to reinvest it in the Santa Maria Hotel?

A. Yes. That option was given to me. Tom Konig verbally said to me if I ever needed any of my principal back, he would give it back, and when the hotel was refinanced, I asked for $25,000 of the original $300,000 Promissory Note. He returned that to me with a quarterly interest payment according to the agreement, and that left the $275,000 going into the Promissory Note it was – that was reinvested in the Santa Maria hotel per this document.

Q. Had you – strike that. You could have taken – at this point in time, if you had wanted to, you could have received the entire $300,000; correct?

A. Yes.[25]

Given Krajeski's admission regarding her election to invest rather than receive payment of the remaining balance of $275,000 due under the $300,000 Note, the court will sustain Faith's objection to Krajeski's Claim # 37-3 and disallow the claim with respect to the principal sum of $275,000 sought under the $300,000 Note.

G. Krajeski's Fraud Claim.

Krajeski's Claim # 37-3 includes an alternative claim for damages of not less than $275,000 for alleged misrepresentations made by Debtor to Krajeski in conjunction with her investment of the $275,000 in the Santa Maria Holiday Inn hotel on or about February 20, 2007. According to Attachment 1 to Claim # 37-3, "[Krajeski] would not have reinvested $275,000 into what she believed was the Santa Maria Holiday Inn hotel" "[h]ad [she] known of Konig's dealings with Prenatt."[26] As previously noted, Krajeski's alternative claim is not supported by

---

[25] Id.

[26] Id., Exh. A:9.

any documents attached to the proof of claim which would be entitled to the evidentiary effect afforded by FRBP 3001(f).[27]  Claim # 37-3 is signed under penalty of perjury by Jared L. Inouye, Krajeski's counsel, not Krajeski.  There is no evidence that Jared L. Inouye was present when the alleged misrepresentations were made.  Exhibits A through I attached to Krajeski's Claim # 37-2 and incorporated by reference into Claim # 37-3, including the Amended Declaration of Tami Krajeski in Support of Amended Proof of Claim, do not state any facts that would support a claim for damages for fraud or securities fraud.  Neither the Declaration of Tami Krajeski, the Declaration of David Krajeski, nor any other evidence filed in opposition to Faith's Motion include facts that would support a claim for damages for fraud or securities fraud.  Having failed to establish the validity of her claim by a preponderance of the evidence, Krajeski's alternative claim for damages of $275,000 for alleged fraud and securities fraud will be denied.

### III. CONCLUSION

In sum, the court will sustain, in part, and overrule, in part, Faith's Motion seeking disallowance of Krajeski's Claim # 37-3, which will be allowed in the amount of $316,655.19 consisting of (1) $221,547.96 due under the $150,000 Note; (2) $60,641.10 in accrued interest from April 1, 2004 through February 19, 2007, due under the $300,000 Note; and (3) $34,466.13 in attorneys' fees and costs.  The balance of Krajeski's Claim # 37-3, including her alternative claim for damages in the amount of $275,000 for alleged fraud and securities fraud will be disallowed.

A separate order will be entered consistent with this memorandum decision. ###

Date: August 27, 2015

Peter H. Carroll
United States Bankruptcy Judge

---

[27] See footnote 7, supra.